**VAN ORMAN et al. v. ROBINSON et al.**

No. 21664.  Opinion Filed April 28, 1931.

Rehearing Denied June 23, 1931.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

Arnold T. Fleig and D. H. Evans, for respondents.

McNEILL, J. This is an original proceeding in this court to review an order and award of the State Industrial Commission in favor of the respondent, W. H. Robinson, against the petitioners, C. E. Van Orman and the United States Fidelity & Guaranty Company, made and entered on the 6th day of August, 1930, wherein the Commission found that the respondent had sustained an accidental personal injury arising out of and in the course of his employment with C. E. Van Orman on December 10, 1929, by reason of which he was entitled to compensation at the rate of $12.69 per week for temporary total disability from the date of the accident to July 15, 1930, and further compensation for 20 per cent. permanent partial disability due to the injury to his back computed at the same rate per week from July 15, 1930, for a period of 100 weeks.

It appears that the respondent was injured on December 10, 1929, while in the employment of said Van Orman and at the time of his injury was engaged in running a jack hammer breaking rock at a daily wage of $3.30. While working with this hammer, which the evidence shows weighed between 80 and 90 pounds, a shower of heavy rocks fell upon respondent and as a result thereof respondent sustained severe injuries to the lower portion of his back.

The evidence showed on behalf of respondent and his physician restricted motion in the back and hips of said respondent and that respondent experienced great pain when any attempt was made to bend, stoop, or lift, as a result of which respondent was unable to do manual labor. In his own language (page 6 of the transcript of the record) he states:

"Q. State the extent of your movement. A. I can stoop over and bend about as well as ever. I can't pull up at all without a brace and belt on. I am weak. I can't do it without there is great pain in the back and hips. * * * Q. You say you are wearing a brace at this time? A. Yes. Q. A steel brace? A. Yes. * * * Q. Have you any pain in the back and hips—are you able to bend and stoop and move from side to side without your brace? A. I can get down, but it is great pain. Q. It is great pain? A. Yes, sir. Q. Have you tried to lift? A. Well, none to speak of. I tried to pick up a pail of water, just can't at all. * * *"

On Cross-Examination.

"Q. Have you any intention—(that is of trying to work?) A. If I thought I was able at all, I would. I am a laborer, you know. Q. And you have not tried? A. Just as I say, I am just knocked out by doing a little exercise. * * * Q. Well now—are you able after you try to stoop—state whether or not you have tried to stoop and bend? A. Yes, sir. Q. With what result? A. I have great pain. Just to stoop over and go to pick up something or other, I most have to get on my knees to get it at times. Q. Your back is stiff? A. Yes, and there is a big, sharp pain in there. * * * Q. You are willing to go to work as soon as you are able to? A. Yes, sir. * * *"

By the Court:

"Q. What kind of work is running a jack hammer? A. Sir? Q. Is that heavy work? A. Yes, it weighs 89 or 90 pounds without the hose. You can guess whether it would be heavy or not. Q. It is run with compressed air? A. Yes, sir. Q. And you have this jarring? A. Yes, jars all the time. Q. You testified you were not able to work at this time? A. No, I could not pick a jack hammer up off the ground. * * *"

Re-Cross-Examination:

"Q. Have you tried to pick a jack hammer off the ground since you were injured? A. No, but I can't pick a pail of water up, much less a jack hammer."

Petitioners contend that the Commission erroneously awarded the claimant compensation at the rate of 66⅔ per cent. of his average weekly wage before the injury without taking into consideration his ability to earn after the injury; that the Commission erred in awarding the claimant compensation at the rate of $12.69 per week; and also erred in awarding the claimant compen-

sation for 20 per cent. of 500 weeks instead of 20 per cent. of 300 weeks.

Petitioners concede, however, that there is evidence to support the finding that the respondent had a 20 per cent. permanent partial disability, but urge that the Commission erred in computing the number of weeks of compensation due the respondent as well as the weekly compensation to be paid.

It was agreed in this case that the respondent before the injury was making $3.30 a day, and petitioners contend that under the Workmen's Compensation Law respondent had an average weekly wage of $19.04. There is no evidence showing that respondent had any earning capacity after his injury and petitioners reason that, inasmuch as the earning capacity of respondent has been decreased 20 per cent. according to the findings of the Commission, he is now capable of making $15.23 per week. This is based upon the theory that the statute provides for the difference between respondent's average weekly wage, to wit, $19.04, before the injury, and his wage-earning capacity after the injury, which, under petitioners' contention, is $15.23, and that this difference of $3.81 should be used as the basis of determining the amount of compensation to be paid in this case. Carrying petitioners' contention further, respondent should get 66⅔ per cent. of this $3.81 for a period not to exceed 300 weeks, which, mathematically applied, amounts to $2.54 a week, and under this computation, conceding that claimant was entitled to 100 weeks' compensation, he would be entitled to the sum of $254 as compensation, instead of $1,269, as awarded by the Commission.

Under the Workmen's Compensation Act, there are four designated classes of disability for which compensation is payable. They are as set forth in section 7290, C. O. S. 1921, as amended by the Session Laws of 1923, as follows: (1) Permanent total disability; (2) temporary total disability; (3) permanent partial disability; (4) temporary partial disability; and each class is separately treated therein.

Petitioner and respondent agree that this case falls within the third subsection, to wit, permanent partial disability under the provision, to wit, "other cases."

"In this class of disabilities the compensation shall be 66⅔ per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability, not to exceed 300 weeks, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon the application of any party in interest."

In this section it is to be observed that "in this class of disabilities the compensation shall be 66⅔ per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment; * * * but subject to reconsideration of the degree of such impairment by the Commission."

Disability or incapacity for work, in the sense in which it is used in the Compensation Acts, means inability to earn wages or full wages, as the case may be, at the work in which the injured workman was employed at the time of the accident. (Schneider, Workmen's Compensation Law, Page 1006).

The purpose of the Compensation Act is not indemnity for any physical ailment, but for loss of earning power, disability to work, Rialto Lead & Zinc Co. v. State Industrial Commission, 112 Okla. 101, 240 Pac. 296; Cosmos Mining Co. v. State Industrial Commission, 101 Okla. 283, 225 Pac. 720; Skelton Lead & Zinc Co. v. Industrial Commission, 100 Okla. 188, 229 Pac. 255.

We think this case comes within the rule announced in the case of Texas Co. et al. v. Roberts, 146 Okla. 140, 294 Pac. 180, wherein the respondent Roberts was blown off of an oil derrick and sustained a crushed hip, the Commission finding that the respondent on said day sustained an accidental personal injury which was permanent and partial to the extent of 25 per cent., and that the claimant's average wage was $4 per day. The Commission based its award at the rate of $15.39 per week for a period of 125 weeks, a total sum of $1,923.75. In this case there was evidence to show that respondent was unable to obtain steady employment of a gainful nature for a period of more than two years after the injury.

The court states, in speaking of the aforesaid provision, to wit, "other cases," as follows:

"It will be noted that in this class compensation may be for a duration not to exceed 300 weeks, subject, however, to reconsideration of the degree of such impairment, * * * and wherein there is no substantial wage-earning capacity subsequent to the injury which otherwise should be deducted from the previous wage-earning capacity as a part of the calculation * * *

"Impairment of wage-earning capacity under a liberal interpretation is enjoined upon us by a settled policy of the law

(McAlester Colliery Co. v. State Indus. Comm., 85 Okla. 66, 204 Pac. 630, Thompson v. State Indus. Comm., 138 Okla. 166, 280 Pac. 597), means not only inability to perform obtainable work but also inability, on account of the impairment to secure work to do. Gorrell v. Battelle, 93 Kan. 370, 144 Pac. 244.

"Moreover the very basis for compensation, by the words of the statute, under the third subdivision, is 'wage earning capacity' and 'degree of such impairment.' Those phrases are not prefaced by the word 'physical,' even though accidental personal injury is the basis of compensation. The result is that any deprivation of power to earn wages as a workman as a result of the injury is 'incapacity' within the meaning of the law.

"The percentage of disability is immaterial as applied to permanent partial disability. It only becomes material when it is 100 per cent. or total, in which event it falls within subdivision 1, with an allowable continuance not to exceed 500 weeks.

"The final analysis is that, since claimant was permanently partially disabled, he was entitled to receive 66⅔ per cent. of the difference between his prior average weekly wage ($24) and his subsequent wage-earning capacity (nil), which amount is $16, and for a duration not to exceed 300 weeks, but subject to reconsideration of the degree of such impairment (wage-earning capacity) by the Commission on its own motion or upon the application of any party in interest."

Petitioners insist that, inasmuch as the respondent suffered permanent partial physical disability of 20 per cent., said respondent also sustained a 20 per cent. loss of wage-earning capacity. The term physical disability is not necessarily synonymous with wage-earning capacity. When the physicians testified in reference to the disability of the respondent, they testified as to his physical disability; they were not called upon to pass upon his impairment of wage-earning capacity. It would be straining the language of our Workmen's Compensation Law to say that because one suffered a 20 per cent. permanent partial physical disability, he also suffered 20 per cent. loss of wage-earning capacity. Nor can the statute be construed to say that in this class of disabilities the compensation shall be based upon 66⅔ per centum of the difference between claimant's physical disability before the injury and after the injury. In plain terms it states that the compensation shall be 66⅔ per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise payable during the continuance of partial

disability, etc., in short, the difference between his average weekly wages and his wage-earning capacity thereafter. In this case there is no evidence that respondent was able to perform his former work or take up any other line of wage-earning work. The Commission was warranted in basing its compensation as set forth in its award.

We next consider petitioners' second proposition, as to whether or not the Commission erred in awarding the respondent compensation for 100 weeks. Petitioners contend that the Commission erred in awarding claimant compensation, based as they argue, for 20 per cent. of 500 weeks instead of 20 per cent. of 300 weeks, the maximum allowed by the statute for permanent partial disability, and, on the other hand, respondent contends that the Commission did not err in awarding compensation for 100 weeks to respondent for the reason that said Commission in estimating respondent's disability and limiting the same to 100 weeks was acting simply as a fact-finding body.

There was no real contention that respondent has not suffered some permanent partial disability due to the injury received to his back arising out of and in the course of his employment. The evidence was before the Commission that respondent was a laboring man of about 50 years of age; that he could not pull up without a brace and belt; that any effort at lifting or stooping was painful, and that he had a bone deposit upon the vertebrae. The Commission heard the respondent testify, his physician, and the physicians of petitioners, and before they made the award were fully cognizant of all the facts in this case bearing on the question of respondent's disability and the period during which his condition justified a finding for impairment of wage-earning capacity.

In the case of Gorrell v. Battelle, 93 Kan. 370, 144 Pac. 244, cited in the Roberts Case, supra, which was an action for compensation under the Workmen's Compensation Act wherein compensation was awarded plaintiff for partial incapacity for work for the maximum period and in a lump sum, the court states:

"What the Legislature had in mind was compensation for loss of earning power as a workman as a result of injury. * * * Under the terms of the statute, the periodical payments which are the units of compensation are to be extended during incapacity, not exceeding eight years. The duration of incapacity becomes, therefore, a subject for the determination of the trial court and is to be determined in the same way as other questions of fact. The task

will frequently be difficult to discharge because of the speculative nature of the subject and because of the moral factor involved, the character and ability of the injured workman."

Under our statute compensation may be paid during the continuance of such partial disability, not to exceed 300 weeks, but always this payment is subject to reconsideration by the Commission. The Commission had all the facts before it, made its finding, and, as stated in the Gorrell Case, supra, "the duration of incapacity becomes, therefore, a subject for the determination of the trial court and is to be determined the same way as other questions of fact. The task will frequently be difficult to discharge." So in this case, no yard-stick measure could be applied so as to positively and definitely state that this impairment of wage-earning capacity would extend for a definite time of 100 weeks. This, however, was the opinion and judgment of the Commission predicated on the evidence submitted before them. At all times in the future, if the petitioner, or any one interested, is of the opinion that this finding is erroneous and that the degree of impairment or wage-earning capacity of the respondent herein has changed, this matter can properly be submitted to the Commission for future determination thereof.

This same principle was upheld by the Ind'ana Supreme Court in the case of Consumers Co. v. Ceislik, 69 Ind. App. 333, 121 N. E. 832, wherein the court states:

"That the Industrial Board awarded compensation for maximum period of 500 weeks instead of 300 weeks as asked by claimant does not afford ground for reversal, the duration of award being limited as the law provides, and the appellant not having shown that its rights were in any way prejudiced."

After a careful review of this record and the briefs submitted, we find that the Commission was justified in this case in resolving the reasonable inference in favor of the respondent, which principle has been repeatedly followed by this court, and made a proper application of the facts in this case to subsection 3, section 7290, C. O. S. 1921, supra, under which the rate of compensation in this case is governed by wage-earning capacity.

Finding no prejudicial error herein, the award of the Commission is affirmed.

CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. LESTER, C. J., concurs in conclusion.